EDWARD S. ROWLAND vs. JAMES M. SMITH AND ANOTHER.

The plaintiff as accommodation endorser had been compelled to pay a protested note on which the defendants were prior accommodation endorsers. He held as security a mortgage made by another party for the accommodation of the makers, which proving defective he released it and the mortgagor made a new mortgage to a savings bank for a loan of larger amount than the debt, of which loan the plaintiff received and retained the exact amount of the protested note, but there was no agreement as to how the money should be applied. In a suit against the defendants as endorsers of the note, it was held—
1.  That on all the facts, which were reviewed by the court, the note must be regarded as paid by the money received by the plaintiff from the security.
2.  That if the money was to be regarded as only security in his hands, to which the defendants would become entitled in equity on being compelled to pay the note, the law would not allow him to recover of them the amount of the note and leave them to recover back from him the money in his hands, but would require him to apply the money directly to the payment of the note.
    [Two judges coming to a different conclusion upon the facts and dissenting as to the result.]

ASSUMPSIT against the defendants as endorsers of a promissory note, by the plaintiff as endorsee; brought to the City Court of the city of New Haven, and, by appeal of the plaintiff, to the Superior Court. Tried to the court on the general issue, with notice, before *Sanford, J.* Facts found and judgment rendered for the plaintiff, and motion for a new trial by the defendants. The case is sufficiently stated in the opinion.

*J. W. Alling* and *S. H. Wagner,* in support of the motion.

*C. S. Hamilton,* contra.

CARPENTER, J. Crofut & Co. applied to the plaintiff to aid them in procuring a loan of $2000. He agreed to indorse their note if Elias Smith, the father-in-law of Crofut, would mortgage his farm to secure him. He indorsed the note and received the mortgage. The defendants were

prior indorsers. The makers failing to pay, the note was protested and paid by the plaintiff. After paying the note the plaintiff, being advised that the Elias Smith mortgage was invalid, made a new arrangement with him under which he released the mortgage, and the same property was mortgaged to the New Milford Savings Bank for $2500, the plaintiff signing the note as surety. The avails of that note were paid to the plaintiff. Of the money so received he retained the interest on the amount paid for Crofut & Co., and also the sum of $2000, but the case finds that there was no understanding or agreement that it should be applied in payment of the note of Crofut & Co., and it is not expressly stated for what purpose it was retained.

Before the note fell due the defendants failed, and at that time were negotiating a compromise with their creditors. The plaintiff was their agent for that purpose, and four days before he paid the note he informed the creditors, who had knowledge of the existence of this note, that it was provided for. The composition was afterwards signed by the creditors, but this note was not treated as a claim against the defendants, and was not on the schedule of debts. After the composition agreement was signed by the creditors it was sent to the plaintiff, who, pursuant to its terms, and in behalf of the defendants, settled with the creditors. It does not appear that the plaintiff at any time informed the creditors that he had or intended to have any claim against the defendants as prior indorsers, but continued the negotiations and carried into effect the settlement after paying the note, allowing the creditors to act in the belief that the defendants were getting a discharge from all their debts. Nearly eighteen months later this suit was brought. Judgment was rendered for the plaintiff, and a motion for a new trial and a motion in error were filed by the defendants.

It is very clear from the record that the defendants were accommodation indorsers. They insist that the money received by the plaintiff from the avails of the savings bank loan, should be applied in payment of the plaintiff's

claim. In this we think they are correct. There is no indication that it was received for any other purpose, and all the indications in the record point to that as the only purpose. The negative finding that there was no agreement or understanding that it was to be applied in payment, amounts to little, inasmuch as no such agreement is essential to the defense; for, if the plaintiff received the money under such circumstances as that he ought to apply it in payment, the law will require him to do so, independently of any agreement. After a careful consideration of the circumstances, a majority of the court are of the opinion that the money ought to be so applied.

The plaintiff's counsel concede that he holds the money as security, and it is not denied that he holds it as security or rather indemnity for the amount paid on this note, although it is suggested that in a certain contingency it may be held as partial security for signing the note to the savings bank. It is very evident however, that that was not the purpose for which it was retained as there is no pretense that the farm is not a sufficient security for the loan. Moreover, the retention of the money for that purpose makes it a very extraordinary transaction. Men do not often mortgage their farms to a savings bank, leaving four-fifths of the loan in the hands of a surety as security.

On the other hand, if it was left as security for the demand in suit, it is a transaction consistent with all the facts. It is the exact amount of that demand then due him according to his computation. The whole loan came into his hands.

He paid from it six months' interest in advance, $75.00
Expenses of attorney, &c.,  - - - -   20.25
Interest on note in suit,  - - - - - 25.00
For services procuring loan, - - - -  25.00
Paid Elias Smith,  - - - - - - 354.75
Retained by plaintiff,  - - - - 2000.00

Total,  - - - - - - $2500.00

This coincidence was not accidental. It was evidently by design.

Again, the plaintiff paid himself from the avails of that loan the interest on his demand, computed, as will appear from the dates, at $25 for twenty-two days. Why pay the interest if the principal was not also provided for? It is idle to suppose that he was at all that trouble merely for the purpose of collecting interest for twenty-two days, or that he intended to release his security for the principal sum.

Thus it appears that the plaintiff immediately after taking up the note, converted the security into money, retained in his hands the exact amount of his claim, principal and interest, and accounted for the balance to the party entitled to it. And so the matter rested until the commencement of this suit, about eighteen months afterwards. It will not be forgotten that at the time the money was received the makers were bankrupt, and the defendants, the only prior indorsers, were then compromising with their creditors for thirty cents on the dollar.

It is significant also in this connection that the plaintiff, on the 15th of January, 1878, three days before the note fell due, told the creditors of the defendants that this note was provided for, made no claim against the defendants, and allowed all their assets to be used in the payment of their other creditors.

In view of these facts, we cannot doubt that the plaintiff intended to keep the money in question to indemnify him, and that the idea of suing the defendants was an afterthought.

But what is the object of this suit? It will not be claimed that it is for the benefit of the makers, nor is it claimed that it is for the benefit of Elias Smith. It appears to be for the benefit of the plaintiff alone. But what advantage is it to him? He already has in his hands, with a perfect right to pay himself any moment, more than sufficient for that purpose, for he also received a dividend from the estate of Crofut & Co. The only plausible answer is that it places in his hands so much more money as security for the savings bank note. It requires no argument

to prove that he has no right to collect the money for that purpose.

If the defendants were not accommodation indorsers, but had the avails of the loan, or were so interested in the transaction as that it was their duty ultimately to pay the note aside from their indorsement, we could then see a reason for this proceeding. But no such fact appears in the case. The defendant Smith is a brother-in-law of Crofut, and a son of Elias Smith. He as the agent of Crofut & Co., applied to the plaintiff for the loan, and after the note was perfected he took it to the bank for discount. But he did all this, not as a partner, not for Smith & Co., but for Crofut & Co.; and Crofut & Co. had the money. It is mere assumption, without any foundation in fact, to say that Smith & Co. are the real debtors.

If the plaintiff succeeds what is the result? It will not be claimed that the plaintiff may retain both funds for his own use. If he refunds to Elias Smith the amount received from him, that throws the loss on the defendants. That would be just if they were the real debtors, but not otherwise. What security, if any, Elias Smith or the defendants had from the makers, we are not informed. What the equities are as between those parties we know nothing. But we think it is very clear that Elias Smith has no legal claim on the defendants for indemnity through the plaintiff or otherwise, unless possibly they may be treated as co-sureties. But this suit is not adapted to enforce any claim on that theory.

There is one other possible answer to the question, and that is, that the defendants are entitled, after paying the plaintiff's judgment, to the security in his hands. Counsel concede this. But, as that security is in money, why sue for and collect money with one hand to pay it directly back, or an equal amount, with the other? We discover no advantage in such an operation; indeed it is a transaction which the law neither requires nor tolerates. Having in his own hands the indemnity in money, he was bound to apply it, and had no occasion to sue the prior indorser.

---

---

We say nothing of the effect of changing the security, or of releasing a part of it. The reasons already suggested satisfy us that the defendants are entitled to a new trial.

In this opinion PARK, C. J., and GRANGER, J., concurred.

PARDEE, J., (dissenting.)  About October 1st, 1877, James M. Smith, partner with F. P. Hull, as Smith & Co., asked the plaintiff to loan $2000 to Crofut & Co.; he agreed to do so if Elias Smith would deliver to him his note for $3500, secured by a mortgage to be held as security. There is no occasion for considering the excess of $1500. On October 8th, 1877, Elias Smith made his note for $3500 and a mortgage to secure it, and soon after delivered both to the plaintiff for the purpose above specified. On October 15th, Crofut & Co. made their note for $2000, payable to the order of Smith & Co., the defendants, three months from date at bank, and delivered it to them; they indorsed and took it to the plaintiff; he indorsed and returned it to them, and they procured it to be discounted at bank and received the avails. Crofut & Co. went into bankruptcy, and Smith & Co. became insolvent in December, 1877; the note was protested and paid at maturity by the plaintiff. Soon afterwards, being advised that there was a defect in the mortgage made by Elias Smith, and that it afforded him no protection, he released it; then Elias Smith and himself became joint and several promisors in a note for $2500 to the New Milford Savings Bank, which was secured by a mortgage by Elias Smith. From the sum thus borrowed the plaintiff kept in his possession $2000; also $25 as interest on the unpaid note of Crofut & Co; and delivered $354.75 to Elias Smith, being the balance remaining after payment of expenses attending the loan. He then instituted this suit upon the defendants' indorsement.

The finding is that Elias Smith was required to "execute to him, the plaintiff, his promissory note for $3500,  *  * together with a mortgage of his farm,  *  *  to be held

by the plaintiff as collateral security for the liability he might incur by indorsing the note in suit."

Therefore, in legal effect, Elias Smith became and may be spoken of as an indorser after Smith & Co. and before the plaintiff upon the note in suit; for he was not required, and did not intend, to protect the first indorsers from liability; nor did he do it. The mortgage was demanded by and given to the plaintiff solely; whatever of security it afforded was his individual property, to be retained or surrendered at his pleasure without accountability to any one. Assuming it to have been valid, his release of it is no answer to his claim. Believing it to be useless, he naturally desired to secure himself by another. Elias Smith was willing to make an effective one in pursuance of his agreement to give security, hoping perhaps thus to induce the plaintiff to institute his suit against Smith and Co., the first indorsers, rather than against himself, the second. To that end he was willing to become principal promisor upon a note to the New Milford Savings Bank, to secure that note by a mortgage not to be doubted, and to permit the borrowed money to remain in the keeping of Rowland. Concerning this last point, the finding is that "there was no understanding or agreement that the money received by Rowland from said bank was to be applied by him in payment of the note in suit. The amounts received by the plaintiff are still held by him, and he is still holden to said bank for the payment of said note of $2500." This is in effect a finding that both purposely abstained from making it a payment of that note, and that the money by their joint agreement remained in the hands of Rowland as a depositary until they should make a final disposition of it; an arrangement possible both in fact and law; and I do not think that the reception of it in this form should bar him from a recovery against the first indorser.

The effect of the advice given by this court is to remove from both the maker and first indorser of an accommodation note, who received and retained the entire avails thereof, all liability, and impose it, with the added burden of a bill of

costs, upon the second indorser, who has never had any benefit therefrom, and whose hope for relief must rest upon one or more suits against insolvents.

I think that the holder of the note should be allowed to enforce payment upon either the maker or indorser at his pleasure. If he is paid by Smith & Co., first indorsers, he ceases to have any claim upon Elias Smith. He must of course return to Elias Smith the $2000 specially deposited by the latter with him. Elias Smith will then return it to the New Milford Savings Bank and redeem his farm. Crofut & Co. and Smith & Co., who borrowed money, used or kept it, will pay it back, and that without imposing a bill of costs upon Elias Smith; thus from one, and that the present suit, complete justice will result.

In this opinion LOOMIS, J., concurred.